IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR GRADY, | |
| Petitioner, | |
| v. | Case No. 20-cv-02530 |
| DAVID GOMEZ, Warden, Stateville Correctional Center | Judge Mary M. Rowland |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Arthur Grady, an Illinois prisoner, petitions for a writ of habeas corpus under 28 U.S.C. § 2254 [1]. The Petition is denied along with Petitioner's request for an evidentiary hearing. A certificate of appealability is warranted.

**I. Background**

A federal habeas court presumes that state court factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted). The Appellate Court of Illinois is the last state court to have adjudicated Grady's case on the merits. *People v. Grady*, 2019 IL App (1st) 163012-U (Ill. App. May 10, 2019) (unpublished order) (reproduced at Dkt. 18-3); *See also People v. Grady,* 2015 IL App (1st) 132160-U (Ill. App. Oct. 16, 2015) (reproduced at Dkt. 18-1). The following sets forth the facts as that court described

1

them and the procedural background of the state criminal and post-conviction proceedings.

### A. Factual Background

This case involves the shooting death of Ralph Turner, Jr. on January 30, 2009. *Grady,* 2015 IL App (1st) at ¶ 3. Petitioner Arthur Grady and his co-defendant Aaron Bronson were charged with first-degree murder. *Id.* Aaron Bronson pled guilty and testified against Grady. At trial, the State presented evidence that Grady and Bronson planned to rob Turner after seeing him win money at a casino in Indiana. According to the charges, when Turner resisted during the robbery, Grady shot him. *Id.* at ¶ 4. The State introduced evidence that Turner and his friends were at Horseshoe Casino in Indiana. Once Turner and his friends returned to Chicago, and while one of Turner's friends was dropping Turner off at his house, the SUV Grady was traveling in stopped and a "man in a dark hoodie" got out of the passenger seat. One of Turner's friends and a woman who lived down the block testified they heard gun shots, and saw the SUV driving down the street in reverse just before 4 a.m. *Id.*

Aaron Bronson, Grady's co-defendant, testified against Grady at trial in exchange for a guilty plea to first degree murder and twenty-four years in prison. *Id.* at ¶ 7. He testified that while at the casino with Grady, Grady told him that he lost money and he saw a group of men who had "about $30,000" and he thought they should rob them. *Id.* Bronson agreed. *Id.* Later Grady told Bronson to get his truck because the group was leaving. Bronson got his truck and waited for Grady to tell him that it was time. When Bronson went to pick Grady up, he saw the group of men

2

enter a black Mercedes. *Id.* at ¶ 8. He and Grady followed the Mercedes. until they saw it come to a stop. *Id.* At that point, Grady jumped out of the truck with a gun and ran up to Turner as he was going to his front door. Bronson testified that he then saw Grady hovering over a man lying on the ground. *Id.* Bronson fled to Grady's apartment and waited. When Grady returned, he told Bronson that he did not get any money and he tossed the gun. Bronson also testified that Grady went back out to find the gun and eventually returned with it. *Id.*

Using Grady's cell phone recovered at the scene, video footage from the casino and a photo array lineup, Chicago Police obtained a search warrant for Grady's apartment. During the execution of the warrant, police found two guns, one of which was later determined by an expert to be the murder weapon. *Id.* at ¶ 6.

Grady testified at trial that he and Bronson were not together at the casino. *Id.* at ¶ 9. He denied talking to Bronson about robbing the group. *Id.* Instead, when he and Bronson left the casino, Grady fell asleep and did not wake up until the truck came to a sudden stop. *Id.* at ¶ 10. At that time, Grady saw Bronson get out of the truck, walk up to a man on the sidewalk and engage in conversation. *Id.* Grady testified that he got out of the car when the man punched Bronson, intending to stop the fight, but returned to the truck when he heard two gunshots. *Id.* After leaving the scene, Grady realized he could not find his phone. *Id.* at ¶ 11. According to Grady, the gun found in his apartment belonged to Bronson. *Id.*

The jury "found defendant guilty of first-degree murder, but also found that the state had not proven the allegation that defendant personally discharged a

3

firearm that proximately caused death to another person." *Id.* at ¶13. At sentencing, the State presented evidence of Grady's criminal history. Grady's grandfather testified in mitigation and discussed defendant's progress and work history. Grady apologized to the victim's family but maintained his innocence regarding Bronson's crime. *Id.* at ¶14. The sentencing court discussed the testimony presented at sentencing and found that the defendant had "very little, if any, rehabilitative potential" and sentenced him to sixty years in prison. *Id.* at ¶15. The trial court later denied Grady's motion to reconsider his sentence.

### B. Direct Appeal

On direct appeal, defendant argued his sentence was excessive and the trial court abused its discretion in imposing "what is essentially a life sentence where the jury found that he was not the shooter, but rather, was only accountable for his co-defendant's actions." *Id.* at ¶ 17. The Illinois Appellate Court affirmed the sentence, only making a small correction to reflect days already served. *Id.* at ¶¶ 20-21. The Illinois Supreme Court denied his petition for leave to appeal (PLA). *See* Dkt. 17, Exh. B.

### C. Post-Conviction

In July 2016, Grady filed a *pro se* post-conviction petition with sixteen claims, two of which are before this Court. The appellate court dismissed the petition and Grady appealed. Notably, Grady argued on appeal that appellate counsel was only ineffective for failing to challenge the sufficiency of the evidence. *See* 17-J, *Post-conviction Appellant's Brief*. The Illinois Appellate Court found that the evidence

4

against petitioner was "overwhelming" and there was no probability an appellate court would have overturned Grady's conviction. *See* Dkt. 17-C, at ¶ 31. Grady appealed to the Supreme Court on both the above claim and a prosecutorial-misconduct claim. The Illinois Supreme Court denied the PLA. *See* Dkt. 17-D.

## II. Discussion

### A. Request for Evidentiary Hearing

Grady requests an evidentiary hearing (Dkt. 23, at 37), but provides no arguments in his petition or his reply as to why an evidentiary hearing is necessary or appropriate.[1] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs the availability of an evidentiary hearing on federal habeas review, and generally bars them except in narrow exceptions. *See* 28 U.S.C. §§ 2254(e)(2)(A), (B); *see also. Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). When the facts are in dispute a court must hold a hearing if the applicant did not receive a full and fair evidentiary hearing in state court. However, an evidentiary hearing is barred when not requested at every stage in state court unless Grady shows his claim relies on a "new constitutional law … that was previously unavailable" or "a factual predicate that could not have been discovered through the exercise of due diligence" when there is "clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* 28 U.S.C. §§ 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479 (2000). Grady did not request an evidentiary hearing at every stage in state court and

---

[1] Grady filed a document entitled a Traverse Introduction on March 31, 2021. [23] The Court accepts this as Grady's reply brief that was due on January 8, 2021. [20].

5

therefore is barred from requesting one here given that he has not alleged a claim that relies on new constitutional law nor facts that could not have been discovered in earlier proceedings. Grady's request for an evidentiary hearing is denied.

### B. Excessive Sentence by Trial Court

Grady claims the trial court abused its discretion when it sentenced him to sixty years in prison despite the jury returning a special verdict that they were unable to find he was holding the weapon that killed Turner but finding him guilty of first-degree murder. Grady cites no case law to support his contention that the jury's verdict was insufficient to support a sixty-year sentence. Dkt. 1 at 7. The sentence falls within the guideline range in Illinois for first degree-murder. 730 ILCS 5/5-8-1. The Seventh Circuit has held that "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *Henry v. Page,* 223 F.3d 477, 482 (7th Cir.2000) *(quoting United States v. Vasquez,* 966 F.2d 254, 261 (7th Cir.1992)). As the Illinois Appellate Court found, there is no evidence that Grady's sentence was based on any abuse of discretion.

The distinction between the general verdict form and special verdict form do not provide a basis to find the trial court judge abused his discretion. The record from the state court indicates that the "trial court was well aware of the facts in the case, including the jury's finding that the State had not proved defendant personally discharged the firearm." *Grady,* 2015 IL App. (1st) 132160-U, at *4. Illinois law specifically allows the state to prosecute those associated with a crime, even if they

themselves did not actually commit the crime meaning, the trial court judge was within his bounds to sentence Grady within the legislatively authorized range for first degree murder. *See* 720 ILCS 5/5-2-3. Grady is not entitled to a writ of habeas corpus based on his excessive sentence claim. *See United States ex rel Hernandez v. Pierce,* 429 F. Supp. 918, 928 (N.D. Ill. Apr. 20, 2006) (holding that a state prisoner's excessive sentence claim is not entitled to a writ of habeas corpus if it falls within state law guidelines); s*ee also Page,* 223 F.3d at 482 (holding a sentence authorized by Illinois law was not based on an abuse of discretion).

### C. Ineffective Assistance of Appellate Counsel for Failing to Challenge the Sufficiency of Evidence

Grady argues that appellate counsel was ineffective for failing to raise insufficiency of evidence on direct appeal. Dkt. 1 at 9. Grady contends that because the jury did not find the essential element that Grady shot Turner, he could not be convicted of murder and therefore, his appellate counsel's failure to raise this claim directly changed the likely outcome of his direct appeal. *Id.* In his reply, Grady raises two instances where appellate counsel failed to challenge the sufficiency of the evidence:

> "(1) where the jury found the evidence insufficient to convict Petitioner of personally discharging the firearm that proximately caused Turners [sic] death but found him guilty of first degree intentional murder of Ralph Turner that had to have occurred with the same firearm the jury acquitted him of personally discharging (citations omitted); (2) where the inherently suspicious accomplice testimony of [the] states [sic] key witness Aaron Bronson was uncorroborated, incredible and unreliable to sustain conviction upon proof beyond a reasonable doubt. (citations omitted).

7

Dkt. 23, at 5-6. To receive habeas relief on an ineffective assistance of counsel claim, Grady must meet the familiar performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984). Under *Strickland*, Grady must show that (1) his attorney's performance fell below an objective standard of reasonableness and (2) he was prejudiced by that deficient performance. *Id.* at 687-88. To satisfy the second element, Grady must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Overall, judicial review of counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689; *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011).

On habeas review, the inquiry is doubly deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), but under AEDPA this Court must also defer to the state court's application of *Strickland* unless it is objectively unreasonable. *See Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). To be clear, the Court is not deciding whether the state court's determination was correct under *Strickland,* but rather whether it "produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (internal quotation marks omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to

8

reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. We address each of Grady's complaints of ineffective assistance in turn.

1. *Inconsistent Verdicts*

Grady alleges his appellate counsel failed to raise a sufficiency of the evidence claim regarding the inconsistent verdicts returned by the jury, and had his counsel done so, his verdict would have been overturned. He asserts that had counsel raised sufficiency of the evidence, the appellate court would have found that "irrational jury verdicts establish [the] state[] failed to prove [the] identity of the shooter beyond a reasonable doubt" and thereby overturn his conviction. Grady further asserts that the Illinois Appellate Court neglected to hear his ineffective assistance of counsel claim regarding inconsistent verdicts, and therefore, this Court should review his claim *de novo*.

Under *Strickland,* Grady must show that but for counsel's failure to raise this claim on direct appeal, the result would have been different. Grady has not met that burden. As discussed in terms of Grady's excessive sentence claim, Illinois law explicitly allows the state to prosecute, convict and sentence those involved in *some* way with a crime as legally accountable for the entire crime. *See* 720 ILCS 5/5-2-3. Illinois law holds that "a person charged as a principal can be convicted upon evidence showing he was in fact only an aider or abetter." *Ashburn v. Korte*, 761 F.3d, 741, 758 (7th Cir. 2014). In fact, even when a defendant is "completely unaware" of his co-defendant's intentions, he will still be held legally accountable for the crimes committed by those in the group. *Id.* at 758-59.

9

Even if appellate counsel would have raised a sufficiency of the evidence claim on direct appeal, it would not have been a meritorious claim for Grady. It was objectively reasonable for appellate counsel to conclude the same. Therefore, Grady's ineffective assistance of counsel claim fails in this regard.

2. *Aaron Bronson's testimony*

The Illinois Appellate Court held that appellate counsel's performance was not deficient because appellate counsel declined to raise an argument that Aaron Bronson's testimony was inherently unreliable. *Grady*, 2019 IL App. (1st) 163012-U, at *1. In making this determination, the appellate court first addressed whether Grady's claim would have been successful if raised on direct appeal. *Id.* at 5. The court noted that there were several other witnesses that testified at Grady's trial, video footage from the casino featuring Grady, and Grady's cell phone found near Turner's body, all creating overwhelming evidence that had "appellate counsel [ ] challenged the sufficiency of the evidence to sustain defendant's conviction on direct appeal, there would not have been reasonable probability that this court would have overturned [the] conviction." *Id.* at 6. The Illinois Appellate Court also found that Grady's argument that Bronson's testimony was "significantly impeached", was "unavailing" because it "corroborated the sequence of events as related by the other witnesses." *Id.* 5. Because the appellate court found on post-conviction review that there was no reasonable probability that it would have overturned the conviction if an attack on Bronson's reliability was raised by appellate counsel, the Illinois

10

Appellate Court found that Grady "suffered no arguable prejudice from counsel's failure to challenge his conviction on direct appeal." *Id.*

This determination was neither contrary to nor an unreasonable application of Supreme Court precedent. The appellate court expressly cited *Strickland* and applied that standard in a thorough and reasonable manner. It was not objectively unreasonable for the appellate court to conclude that Grady's appellate counsel's performance was reasonable, or that Grady was not prejudiced by counsel's performance given that the argument would have failed on direct appeal. Given the deferential standard of review under AEDPA, the Court finds the state appellate court's decision reasonable. Accordingly, Grady's ineffective assistance of counsel claim fails.

### D. Ineffective Assistance of Appellate Counsel for Failing to Raise a Prosecutorial Misconduct Claim

Grady's claim that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim is procedurally defaulted. Pursuant to 28 U.S. § 2254 (b)(1), "an application for a writ of habeas corpus on behalf of a person in custody . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Before petitioning the federal court, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). A habeas claim that was not exhausted in state court will only be granted if it demonstrates a "fundamental miscarriage of

11

justice." *Id.* at 843. This is an exceedingly high standard. "It applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke,* 737 F. 3rd 476, 483 (7th Cir. 2013).

Grady asserted that appellate counsel was ineffective for failing to raise a prosecutorial misconduct argument in his post-conviction PLA (Dkt 17, Exh F at 3). However, Grady did not raise this issue in the appellate court as required. *See generally* Dkt. 17, Exh. J. Grady also does not argue to this Court any cause for the default or prejudice arising from the default in his briefing. Grady does assert that he is not guilty of first-degree murder, but that does not meet the required standard for a "claim of innocence" to excuse default. A claim of innocence is only credible when a petitioner "support[s] his allegations of constitutional error with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S. Ct. 851, 851 (1995). As a result, his petition on this specific claim is procedurally defaulted.

### E. A Certificate of Appealability Is Warranted

If Grady wishes to appeal this denial, he must first obtain a certificate of appealability. Under 28 U.S.C.§ 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court" unless the circuit justice or judge first issues the certificate. 28 U.S.C.§ 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of

the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). The Court issues a certificate of appealability on Grady's ineffective assistance of counsel claim because reasonable jurists could differ on the question of whether the state appellate court reasonably addressed the inconsistent verdicts under *Strickland*.

## II. Conclusion

For the stated reasons, Grady's Petition for a Writ of Habeas Corpus [1] is denied, and a certificate of appealability will issue.

E N T E R:

Dated: October 28, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

13